NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0664n.06

No. 08-2132

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Sep 29, 2009**
LEONARD GREEN, Clerk

LYNN T. PASLEY          )
                        )
    Plaintiff-Appellant,  )
                        )    ON APPEAL FROM THE
    v.                  )    UNITED STATES DISTRICT
                        )    COURT FOR THE EASTERN
VERA CONERLY            )    DISTRICT OF MICHIGAN
                        )
    Defendant-Appellee.  )
                        )
                        )
                        )

BEFORE: BOGGS, ROGERS and WHITE, Circuit Judges.

**ROGERS, Circuit Judge.** Inmate Lynn T. Pasley appeals the dismissal of his pro se civil

rights action against an employee of the correctional institution where he is housed. Pasley filed a

complaint pursuant to 42 U.S.C. § 1983, alleging that Vera Conerly, an Assistant Resident Unit

Supervisor, violated his First, Eighth, and Fourteenth Amendment rights through various forms of

harassment and intimidation. The district court screened Pasley's complaint before serving it on the

defendant and dismissed it for frivolousness and failure to state a claim. Specifically, the district

court cited precedent indicating that Pasley failed to allege facts to support a claim of cruel and

unusual punishment under the Eighth Amendment. The district court did not address Pasley's claim

under the First Amendment. Because Pasley alleged facts that may be sufficient to sustain a claim

of First Amendment retaliation, dismissal prior to serving the claim on the defendant was premature. The case is therefore remanded to the district court for service on the defendant.

Pasley is an inmate in the Michigan Department of Corrections prison system. The following factual statement is based on allegations which we take as true only for purposes of this appeal. At the times relevant to this appeal, Pasley was housed in the Huron Valley Complex. In late November 2007, the prison conducted an administrative hearing and determined that Pasley possessed a large amount of law-related material that he was entitled to keep. When Pasley approached Conerly, his Assistant Resident Unit Supervisor, about obtaining additional footlockers, she responded, "I don't know why you are keeping all that bull-shit, you are not going home anyway . . . ." Pasley sought help from another officer. After that officer talked to Conerly about the incident, Conerly brought Pasley into her office, called him a "rat," and supplied him with a single U.S. Postal Service container. When Pasley objected to taking the container, she told him, "Get out of my face." Pasley then told Conerly that he would file a grievance against her if she refused to help him obtain the necessary storage containers. According to Pasley, Conerly told him that if he filed a grievance, she would have him transferred out of the unit and he would lose his job. She then stated, "I use [sic] to be married to a warden and I will have your ass transferred so far up North that your family [won't] recognize you when you get back." At that point, Pasley took the postal container and left.

A few days later, another officer searched Pasley's cell and found the postal container, which contained steel rods. The officer told Pasley that he would receive a major misconduct ticket for possessing dangerous contraband. Conerly initially denied giving Pasley the container and

encouraged the officer to write the misconduct ticket. However, Conerly recalled giving Pasley the container after Pasley reminded her that she had given him the container in the presence of another officer. Pasley alleges that he later learned that Conerly sent the officer to his cell to search for the postal container. The day after the search incident, Conerly informed Pasley that she would no longer provide him with services such as processing his mail and disbursing funds from his account.

Pasley alleges that on December 10, 2007, as he was leaving Conerly's office after trying to process his mail, Conerly intentionally activated her personal protection device. According to Pasley, Conerly removed the device from her bag, looked Pasley in the eye, and pulled the pin to activate the device. Pasley said he feared for his life as officers from all over the unit quickly responded to the call. An officer who was standing outside of Conerly's line of sight intervened because he had seen that Pasley was outside of Conerly's office at the moment of the call. Conerly then stated that she activated the device accidentally.

Several days later, Pasley filed a formal grievance against Conerly. Pasley pursued the grievance until it was resolved against him at the highest level of administrative review. Pasley then filed a complaint in district court. 28 U.S.C. § 1915A and § 1915(e)(2) require the district court to screen a pro se prisoner's suit before docketing, or as soon as practicable. During that review, the district court concluded that Conerly's complaint failed to state a claim under § 1983 and/or that it was frivolous. The court concluded that verbal abuse, harassment, and unprofessional conduct do not constitute constitutional violations. Although the court purported to dismiss all of Pasley's claims, the authority that the court cited, *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004),

refers only to Eighth Amendment claims for cruel and unusual punishment. The district court did not consider whether Conerly's behavior violated Pasley's First Amendment rights.

Although the district court properly addressed Pasley's claim under the Eighth Amendment, dismissal was premature because Pasley has sufficiently alleged the elements of a First Amendment retaliation claim. The district court correctly concluded that Pasley did not state a claim for cruel and unusual punishment under the Eighth Amendment because general abuse and harassment on the order of what Pasley allegedly experienced, while a shameful reflection on the prison system if Pasley's allegations are true, does not constitute cruel and unusual punishment. *See Johnson*, 357 F.3d at 545-46. However, the district court did not address Pasley's First Amendment claim.[1] A prisoner makes out a First Amendment retaliation claim by showing: "(1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by [his] protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Pasley alleges each element sufficiently to overcome dismissal at this early stage.

---

[1]Pasley also attempts to raise a claim under the Fourteenth Amendment. Because Pasley's claim is cognizable under the First Amendment, it need not be considered under the more generalized due process provision of Fourteenth Amendment. The Supreme Court held in the context of excessive force claims that, where a specific provision of the Constitution applies, a claim must be analyzed under the specific provision rather than under the Fourteenth Amendment. *Graham v. Conner*, 490 U.S. 386, 394-95 (1998). In *Thaddeus-X v. Blatter*, we applied *Graham*'s holding to claims cognizable under the First Amendment. 175 F.3d 378, 387-88 (6th Cir. 1999) (en banc).

First, Pasley's statement that he would file a grievance against Conerly if she did not help him to obtain footlockers might constitute protected conduct under the First Amendment. It is well established that prisoners have a constitutional right to file grievances against correctional employees. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). This circuit appears not to have determined conclusively whether merely threatening to file a grievance constitutes protected activity. In an unpublished order issued shortly after the court decided *Thaddeus-X v. Blatter*, we held that a prisoner who merely threatened to file a federal lawsuit was engaged in protected behavior. *See Dean v. Conley*, No. 98-5906, 1999 WL 1045166, at *2 (6th Cir. Nov. 9, 1999). We based this conclusion on the fact that prisoners have a constitutional right to file civil rights claims. In two other unpublished orders, we held that certain prisoners who had threatened to file grievances were not engaged in protected conduct, but in each case we based our conclusion on the fact that the threatened grievance was frivolous and that prisoners do not have a protected right to file frivolous grievances. *See Scott v. Kilchermann*, No. 99-1711, 2000 WL 1434456, at *2 (6th Cir. Sept. 18, 2000); *Thaddeus-X v. Love*, No. 98-2211, 2000 WL 712354, at *3 (6th Cir. May 22, 2000). These two orders are consistent with the possibility that, had the prisoners threatened to file legitimate grievances, the conduct would have been protected. Because Pasley's threatened grievance was arguably legitimate, his conduct was arguably protected by the First Amendment.

Second, Conerly's actions, as alleged by Pasley, could constitute "adverse action" under the precedent of this court. Pasley alleges that after he mentioned the possibility of filing a grievance, Conerly made two immediate threats: first, to have him moved out of the unit so that he would lose

his job and, second, to use her influence with a warden to have him moved to a location where his family would not be able to visit him. These threats could be "capable of deterring a person of ordinary firmness" from exercising protected rights, the standard for adverse action set forth in *Thaddeus-X*. 175 F.3d at 398. We held in *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005), that a retaliatory transfer to another institution was an adverse action if it resulted in foreseeable, negative consequences to the prisoner, such as loss of his high-paying job and reduced ability to meet with his lawyer. This court has also noted that a mere threat is actionable if it otherwise meets the standard that it would deter a person of ordinary firmness from engaging in a protected activity. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003).

Additionally, Pasley alleges that Conerly's actions subjected him to the possibility of receiving a major misconduct ticket. Pasley alleges that Conerly pressured him to accept an illegal container and then reported him for possessing contraband. In an appeal from the denial of qualified immunity in a prison retaliation case, we noted that precedent "clearly establishes that the mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation." *Scott v. Churchill*, 377 F.3d 565, 571-72 (6th Cir. 2004). In that case, a prison guard retaliated against a prisoner by unsuccessfully framing him for a major misconduct charge. *Id.* Pasley also alleges that Conerly placed him in physical danger by intentionally activating her personal protection device while he was attempting to leave her office. A person of ordinary firmness could arguably be dissuaded from filing a grievance by an action which, if it occurred as Pasley alleges, would have impressed upon Pasley the amount of physical force Conerly could bring

6

to bear on him through a false allegation. This court has noted that, "while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions." *Thaddeus-X*, 175 F.3d at 398.

Finally, Pasley alleges a causal connection between his threat to file a grievance and Conerly's actions. The causal connection hinges on Conerly's subjective motivations for her actions. *See id.* at 399. Conerly's alleged threats to have Pasley transferred came in direct response to Pasley's statement about filing a grievance. She gave him the postal container during that same encounter, and the search of Pasley's cell—along with Conerly's initial denial that she had provided the contraband container—occurred shortly thereafter. According to Pasley, Conerly informed him the next day that she would no longer process his mail or disbursement requests, and it was in the context of Pasley's trying to send out mail that Conerly activated her personal protection device. Pasley has sufficiently alleged that Conerly's actions were motivated, at least in part, by his threat to file a grievance against her. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007).

Regardless of whether Pasley can ultimately prevail on his claim, or even survive summary judgment, Pasley's pleading meets the low requirements for surviving dismissal. This court reviews de novo the district court's order of dismissal. *Thomas*, 481 F.3d at 437. Three provisions of law require district courts to review pro se prisoners' claims prior to serving them on the defendants and to dismiss them if they are frivolous, malicious, or fail to state a claim for which relief can be granted, *see* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c). 28 U.S.C. § 1915A direct the court to dismiss complaints that are "frivolous, malicious, or fail [] to state a claim

upon which relief may be granted." Moreover, § 1915(e)(2) directs the district court to dismiss a case filed in forma pauperis at any time if the court determines it is frivolous or fails to state a claim upon which relief may be granted. Although Pasley has not made an effective argument for First Amendment retaliation either in his original complaint or his brief to this court,[2] the facts alleged in Pasley's complaint arguably contain the elements of such a claim. Courts are instructed to give indulgent treatment to the "inartfully pleaded" allegations of pro se prison litigants. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Additionally, "[t]he Supreme Court has explained that a complaint should be dismissed as frivolous only if it . . . contains factual allegations that are 'fantastic or delusional' or if it is based on legal theories that are indisputably meritless." *Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir. 2000) (Citing *Neitzke v. Williams*, 490 U.S. 319, 325-28 (1989)). Pasley's allegations are not fantastic or delusional, and they are arguably sufficient to make out a constitutional claim. Therefore, his claim is not dismissible either for frivolousness or for failure to state a claim.

For the foregoing reasons, the district court's judgment is AFFIRMED insofar as it dismisses Pasley's Eighth Amendment claim and VACATED insofar as it dismisses his First Amendment claim. The case is remanded for service on the defendant.

---

[2]In his brief to this court, Pasley alleges First Amendment retaliation, but relies solely on his constitutional right to send mail. Because Pasley was ultimately able to send his mail by giving it to a different guard and because there is no indication that Conerly's actions were motivated by Pasley's sending of mail, the particular theory advanced in Pasley's brief has no merit.