RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0395p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DEMETRIUS HILL,

     *Plaintiff-Appellant,*

  *v.*

HARLEY G. LAPPIN, B.O.P. Director;
MCLEOD, Associate Warden, McCreary;
HUFF, Warden, S.I.A. McCreary;
SHELDRAKE, CMC McCreary; BURCHETTE,
Lieutenant, SIS, McCreary,

     *Defendants-Appellees.*

No. 09-5575

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 09-00007—Amul R. Thapar, District Judge.

Decided and Filed:  December 28, 2010

Before:  GILMAN and GRIFFIN, Circuit Judges; ROSE, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:**  Demetrius Hill, pro se.

_____

**OPINION**

_____

  RONALD LEE GILMAN, Circuit Judge.  Demetrius Hill is a federal prisoner who was incarcerated at United States Penitentiary–McCreary (McCreary) in 2009.  Hill alleges that the McCreary prison staff placed him in segregated housing and threatened

---

[*]The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

to transfer him to the lock-down unit at United States Penitentiary–Lewisburg (Lewisburg) in retaliation for grievances that he had filed against the McCreary staff. He also alleges that his life would be in danger if he were transferred to Lewisburg because the staff there would assault and possibly kill him due to his prior history of incarceration at Lewisburg.  To avoid being transferred to the lock-down unit at Lewisburg, Hill sued the Director of the Bureau of Prisons (BOP) and four McCreary staff members, seeking damages, a temporary restraining order, and a preliminary injunction to prevent his transfer.

The district court dismissed Hill's complaint as frivolous because a prisoner does not have an inherent constitutional right to avoid prison transfers or segregated housing, and because his alleged fear of being harmed by the Lewisburg staff in the future was conjectural and lacking in specificity.  Hill appeals the dismissal.  For the reasons set forth below, we **REVERSE** the district court's decision to dismiss the complaint, **VACATE** the judgment entered in favor of the defendants, and **REMAND** the case for further proceedings consistent with this opinion.

## I.  BACKGROUND

The facts set forth below are based solely on the allegations in Hill's complaint. As alleged, Hill is a federal prisoner who has filed suit to prevent the prison staff at McCreary from transferring him to the lock-down unit at Lewisburg.  Lewisburg housed Hill at various points in 2005 and 2006.  Hill contends that staff members there viciously assaulted him in 2005.  He also claims that Lewisburg staff members told other prisoners in 2006 that he was a rat and should be stabbed.  But the plausibility of these claims is undermined by Hill's own complaint, where he admits that his prior lawsuit against certain members of the Lewisburg prison staff for beating him was dismissed because he "was unable to prove his allegations in court."

Against this backdrop, Hill complains that the staff at McCreary have threatened to transfer him from McCreary to the lock-down unit at Lewisburg in retaliation for Hill filing grievances against the McCreary staff.  Two staff members told him that he was

going to be transferred because "they didn't need the paper-work up here."   After reviewing a report prepared by one of these staff members, a third staff member recommended that Hill be transferred to the lock-down unit at Lewisburg.  Hill also alleges that he was placed in segregated housing at McCreary immediately after he filed a grievance against a McCreary staff member.

Relying on the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), Hill filed this pro se civil rights action in January 2009. Because Hill's lawsuit seeks redress from governmental officers, and because Hill proceeded *in forma pauperis*, the district court screened Hill's complaint as required by 28 U.S.C. §§ 1915A and 1915(e)(2)(B).  These statutes provide, in relevant part, that the court must dismiss any portion of the complaint that (1) fails to state a claim upon which relief can be granted, or (2) is frivolous.

The district court dismissed the complaint after determining that the pleading was frivolous because it lacked an arguable basis in fact or law.  Specifically, the court reasoned that Hill's complaint lacked an arguable basis in law because a prisoner does not have an "inherent constitutional right to avoid a transfer from one prison to another, [or] to remain free of security classifications that would place them in segregation or specialized housing units."   The court also found that Hill's allegation that the Lewisburg staff will have him assaulted and possibly killed lacked an arguable basis in fact because it was conjectural and lacking in specificity.  Hill appeals the dismissal of his complaint.

## II.  ANALYSIS

### A.      Standard of review

We review de novo a district court's decision to dismiss a prisoner's complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B).  *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001).  As stated above, these statutes require the court to dismiss any portion of the complaint that (1) fails to state a claim upon which relief can be granted, or (2) is frivolous.  A complaint can be frivolous either factually or legally.  *See Neitzke*,

490 U.S. at 325.  Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted.  *See id*. at 328-29.

The Supreme Court recently clarified the pleading standard for complaints to survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).  This circuit has not yet addressed how these two cases affect the review of complaints under the failure-to-state-a-claim standard found in §§ 1915A(b)(1) and 1915(e)(2)(B)(ii).  We now decide that the dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6).  *See Wolfson v. Carlucci*, 232 F. App'x 849, 850 n.1 (10th Cir. 2007) (applying *Twombly*'s dismissal standard to dismissals under § 1915(e)(2)(B)(ii)); *see also Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) (applying Rule 12(b)(6) standards in reviewing dismissals under § 1915(e)(2)(B)(ii) because the language of the statute tracks the language of the Rule).  So, to survive scrutiny under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *See Iqbal*, 129 S. Ct. at 1949 (citation and internal quotation marks omitted).

Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief.  Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  *Neitzke*, 490 U.S. at 327 (interpreting 28 U.S.C. § 1915).  Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness.  *Neitzke*, 490 U.S. at 327-28.

**B.      Discussion**

The issue in this case is whether Hill's complaint states a nonfrivolous First Amendment retaliation claim upon which relief can be granted.  Although inartfully pled, Hill brings this claim through a *Bivens* action, which allows civil rights claims against federal officials that are analogous to those brought against state officials under 42 U.S.C. § 1983.  *See Butz v. Economou*, 438 U.S. 478, 504 (1978) (reasoning that, "without congressional directions to the contrary," it would "stand the constitutional design on its head" if federal officials were not liable for constitutional violations through *Bivens* actions to the same extent as state officials are through § 1983 actions).  To succeed on a *Bivens* action, a plaintiff must first establish a constitutional violation. *Baranksi v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco & Firearms*, 452 F.3d 433, 444 (6th Cir. 2006) (citing *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971)).

The allegations in Hill's complaint sufficiently state a First Amendment retaliation claim, especially in light of the "indulgent treatment" that "[c]ourts are instructed to give . . . to the 'inartfully pleaded' allegations of pro se prison litigants." *Pasley v. Conerly*, 345 F. App'x 981, 986 (6th Cir. 2009) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  In *Pasley*, this court concluded that the facts alleged in the prisoner's complaint contained the elements of a First Amendment retaliation claim even though the prisoner did not make an effective argument for that claim in his original complaint or in his appellate brief.  *Id.*  Hill similarly fails to explicitly state that he is making a First Amendment retaliation claim, but he alleges that the prison staff at McCreary placed him in segregated housing and recommended that he be transferred to the lock-down unit at Lewisburg in retaliation for the grievances that he filed against the prison staff.

These facts contain the essential elements of a First Amendment retaliation claim.  To establish such a claim, a prisoner must prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of "ordinary firmness from continuing to engage in that conduct," and (3) "the adverse

action was motivated at least in part by the [prisoner's] protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc). We analyze each element in turn below.

### 1.    *Protected conduct*

The first element that Hill must establish for his retaliation claim is that he was engaged in conduct protected by the First Amendment. *Id.* at 394-95. Such protected conduct includes a prisoner's "undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). If the grievances are frivolous, however, this right is not protected. *Id.*

Hill's complaint states that he filed grievances against the prison staff at McCreary "for being abusive." Whether the grievances are frivolous cannot presently be determined because there are no details about those grievances beyond Hill's allegations. But this court has held that a prisoner's complaint can survive screening under §§ 1915A and 1915(e)(2)(B) even if the complaint fails to allege that the prisoner's grievances are not frivolous. *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (rejecting the Michigan Department of Corrections's argument that the prisoner had engaged in only unprotected conduct by filing a grievance because he failed to plead that his grievance was not frivolous.) Moreover, Hill's allegations are to be construed in the light most favorable to him at this early stage of the proceedings. *See id.* at 437.

Hill's complaint therefore establishes the protected-conduct element when scrutinized under the failure-to-state-a-claim standard. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (holding that a complaint survives a motion to dismiss where the factual allegations state a plausible claim for relief). And because Hill's allegation that the McCreary staff were being abusive is at least plausible, his complaint should not be dismissed as frivolous. *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989).

### 2.     *Adverse action*

The second element that Hill must establish for his retaliation claim is that the defendants took an adverse action against him. *Thaddeus-X*, 175 F.3d at 396. An adverse action is one that is "*capable* of deterring a person of ordinary firmness" from exercising the constitutional right in question. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original) (citation and internal quotation marks omitted). "*Actual* deterrence need not be shown." *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) (emphasis in original) (citation omitted). Even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct. *Pasley*, 345 F. App'x at 985. In discussing the level of action or threat necessary to deter a person of ordinary firmness, the *Thaddeus-X* court emphasized that this element is not an overly difficult one for the plaintiff to meet:

> We emphasize that while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions . . . .

*Thaddeus-X*, 175 F.3d at 398. Moreover, because "there is no justification for harassing people for exercising their constitutional rights," the deterrent effect of the adverse action need not be great in order to be actionable. *Id.* at 397 (citation and internal quotation marks omitted). "The plaintiff's evidentiary burden is merely to establish the factual basis for his claim that the retaliatory acts amounted to more than a de minimis injury." *Bell*, 308 F.3d at 606.

Hill alleges two adverse actions by the McCreary staff in his complaint. First, he claims that he was placed in segregated housing just after he filed a grievance against Officer Huff, a staff member. Second, he claims that certain staff members threatened to transfer him to Lewisburg, and that this transfer is harmful for two reasons: (1) the Lewisburg staff will have him assaulted and possibly killed, and (2) he will be sent to the lock-down unit at Lewisburg.

The district court's analysis of these two allegations was misdirected. It reasoned that because prisoners do not "have an inherent constitutional right to avoid a transfer from one prison to another, [or to] remain free of security classifications that would place them in segregation or specialized housing units," Hill could not establish a constitutional violation by alleging that he was placed in segregated housing or threatened with a prison transfer in retaliation for filing grievances. The problem with this analysis is that its premise—that a prisoner does not have an inherent constitutional right to avoid segregated housing or prison transfers—is too narrow. Even though a prisoner has no inherent constitutional right to avoid segregated housing or prison transfers, the BOP may not place the prisoner in segregated housing or transfer him to another prison as a means of retaliating against him for exercising his First Amendment rights. This principle is clearly set forth in *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576 (D.C. Cir. 2002), where the D.C. Circuit stated: "Despite the fact that prisoners generally have no constitutionally-protected liberty interest in being held at, or remaining at, a given facility, . . . the Bureau may not transfer an inmate to a new prison in retaliation for exercising his or her First Amendment rights." *Id.* at 585 (citation and internal quotation marks omitted).

In a First Amendment retaliation claim, "retaliation for the exercise of constitutional rights is itself a violation of the Constitution." *Thaddeus-X*, 175 F.3d at 394. Where the district court's analysis went astray, in other words, was in focusing on the wrong constitutional right; i.e., the nonexistent right to avoid segregated housing and prison transfers versus the existing right to avoid retaliation for exercising the First Amendment right to file grievances against prison officials.

The district court was correct, however, in disregarding as factually frivolous Hill's allegation that the Lewisburg staff will have him assaulted and possibly killed. That allegation is pure speculation and contains no "specificity or detail as to the threats posed by the [Lewisburg] staff." The implausible nature of that factual allegation is underscored by the admission in Hill's complaint that his prior lawsuit against certain members of the Lewisburg prison staff for beating him was dismissed because he "was

unable to prove his allegations in court." Disregarding Hill's implausible allegation, however, does not affect Hill's remaining nonfrivolous factual allegations. We must still consider whether those remaining allegations can support a First Amendment retaliation claim.

This court has held that restricting a prisoner's housing by placing him in administrative segregation constitutes an adverse action. In *Dunham-Bey v. Holden*, No. 98-1522, 1999 WL 1023730, at *2 (6th Cir. Nov. 5, 1999) (unpublished opinion), the district court dismissed the prisoner's complaint for failure to state a claim and as frivolous under 28 U.S.C. §§ 1915A and 1915(e)(2)(B). *Dunham-Bey*, 1999 WL 1023730, at *1. This court reversed the district court's ruling because the prisoner's allegation that he had been kept in administrative segregation was deemed to constitute an adverse action. *Id.* at *2; *see also Herron v. Harrison*, 203 F.3d 410, 416 (6th Cir. 2000) ("[P]lacing an inmate in administrative segregation could deter a person of ordinary firmness from exercising his First Amendment rights.") (citation and internal quotation marks omitted).

Moreover, administrative segregation is not the only kind of housing restriction that can constitute an adverse action; rather, "an action comparable to transfer to administrative segregation would certainly be adverse." *Thaddeus-X*, 175 F.3d at 396. This makes sense because actions that result in more restrictions and fewer privileges for prisoners are considered adverse. *See King v. Zamiara*, 150 F. App'x 485, 494 (6th Cir. 2005) (holding that an increase in the prisoner's security-level classification was an adverse action because it resulted in more restrictions and fewer privileges).

Although the record is unclear as to whether the segregated housing that Hill was placed in at McCreary is comparable to the administrative segregation discussed above, the allegation that placement in segregated housing increased his restrictions and decreased his privileges, or that this placement is comparable to placement in administrative segregation, is at least plausible. Moreover, we must construe Hill's complaint in the light most favorable to Hill at this stage of the proceedings. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Hill's complaint therefore satisfies

the adverse-action element of a First Amendment retaliation claim under the failure-to-state-a-claim standard. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (holding that a complaint survives a motion to dismiss where the factual allegations state a plausible claim for relief). And because Hill's allegation that he was placed in segregated housing at McCreary is at least plausible, Hill's complaint also establishes the adverse-action element without being frivolous. *See Neitzke*, 490 U.S. at 327-28.

Hill's second alleged adverse action—that the McCreary staff first threatened and then recommended that Hill be transferred to Lewisburg—is also sufficient to constitute an adverse action, but only because the transfer would send him to the lock-down unit at Lewisburg. As discussed above, threats alone can constitute an adverse action if the threat is capable of deterring a person of ordinary firmness from engaging in protected conduct. *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009). Although several unpublished Sixth Circuit cases have held that transfers to the general population of another prison are not typically an adverse action, *see Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases), this court has held in other cases that a prison transfer or the threat of a transfer can be an adverse action if that transfer would result in foreseeable, negative consequences to the particular prisoner. *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005) (holding that the transfer was an adverse action because it resulted in the foreseeable consequence that the prisoner would have a harder time meeting with and paying for his lawyer, thereby inhibiting the prisoner's ability to access the courts); *Pasley*, 345 F. App'x at 985 (holding that a threat to transfer the prisoner far away from the prisoner's family was an adverse action because it was foreseeable that his family would not be able to visit him).

The McCreary staff's threat and recommendation in the present case to transfer Hill to the lock-down unit at Lewisburg constitutes an adverse action because the transfer would foreseeably lead to a living environment with more restrictions and fewer privileges than in the prison's general population. Although Hill does not explicitly describe the conditions of the lock-down unit, the very name of the unit implies that it is a more restrictive living environment than the general population of a prison. This

conclusion is supported by the fact that Hill explicitly contrasts placement in the lock-down unit with placement in the general population, noting in his appellate brief that his "legal activities are severely [sic] curtailed in a control unit."

Being threatened with a transfer to a more restrictive living environment with fewer privileges would deter a person of ordinary firmness from exercising the constitutional right to file grievances. *See Thaddeus-X*, 175 F.3d at 396 ("In the prison context, an action comparable to transfer to administrative segregation would certainly be adverse."); *cf. King*, 150 F. App'x at 494 (holding that an increase in the prisoner's security-level classification was an adverse action because it would result in more restrictions and fewer privileges). Hill's complaint therefore establishes the adverse-action element of a First Amendment retaliation claim when scrutinized under the failure-to-state-a-claim standard. *See Iqbal*, 129 S. Ct. at 1949-50. Nor is the threatened-transfer allegation frivolous. *See Neitzke*, 490 U.S. at 327-28.

### 3.      *Motivation for adverse action*

The third element that Hill must establish for his retaliation claim to survive summary dismissal is that the adverse action was motivated at least in part by the prisoner's protected conduct. *Siggers-El*, 412 F.3d at 699. This element addresses whether the defendants' subjective motivation for taking the adverse action was at least in part to retaliate against the prisoner for engaging in protected conduct. *Thaddeus-X*, 175 F.3d at 399. If the prisoner can show that the defendants' adverse action was at least partially motivated by the prisoner's protected conduct, then the burden shifts to the defendants to show that they would have taken the same action even absent such protected conduct. *Id.* at 399.

In the context of trying to defeat the other party's motion for summary judgment, where a prisoner must satisfy a higher burden to avoid having a First Amendment retaliation claim dismissed than Hill has to satisfy at the present stage of the case at hand, this court noted that some evidence of retaliatory motive is required: "[C]onclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a . . . claim." *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir.

2005) (citation and internal quotation marks omitted).  But because of the difficultly in producing direct evidence of an official's retaliatory motive, circumstantial evidence can suffice.  *Holzemer v. City of Memphis*, 621 F.3d 512, 525-26, (6th Cir. 2010).  This circumstantial evidence can include the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action.  *Thaddeus-X*, 175 F.3d at 399.  Although this court has concluded that evidence of temporal proximity between filing grievances and the adverse action provides some support for establishing retaliatory motive, it has been reluctant to find that such evidence alone establishes retaliatory motive.  *Holzemer*, 621 F.3d at 526 (noting explicitly this court's reluctance to find retaliatory motive based on evidence of temporal proximity alone, but concluding that the evidence before it, if true, created an inference of retaliatory motive where temporal proximity existed along with other supporting evidence).

Hill alleges that three evidentiary facts support a retaliatory motive in the present case.  The first is evidence of temporal proximity.  He contends that he was placed in segregated housing at McCreary "right after [he] filed a complaint against" a McCreary staff member.  The second is evidence of disparate treatment of similarly situated individuals.  Hill alleges that he and several other prisoners were involved in the same investigation at McCreary.  All of the prisoners were sent back to the general population except for Hill, who instead was recommended for a transfer to the lock-down unit at Lewisburg.  Hill claims that this disparate treatment evinces a retaliatory motive based on the fact that "[n]o one else has been or is being sent to a control lock down unit because none of them filed complaints against the staff for being abusive."

The third evidentiary fact in support of a retaliatory motive is Hill's claim that two McCreary staff members, Officer Huff and Associate Warden Mcleod, told him "that he was going to be transfered [sic] because 'they didn't need the paper-work up here.'"  He further alleges that Huff "stated that [Huff] would do the investigative report 'personally' to ensure that [Hill] would be shipped."  Lieutenant Bruchette received this report and then recommended that Hill be transferred to the lock-down unit at

Lewisburg. Although Bruchette did not make the "paper-work" statement that Hill contends is direct evidence that he would be transferred in retaliation for filing grievances, this fact is not determinative because Bruchette relied on the report by Huff, who allegedly did make the statement. *Cf. Siggers-El*, 412 F.3d at 701 (reasoning that, with regard to the second element of a First Amendment retaliation claim, an adverse action may be imputed to a defendant who did not have the power to carry out the action because the defendant completed a report that was relied on by the person who did have the proper authority).

These three evidentiary facts are sufficient at this stage of the proceedings to satisfy the retaliatory-motive element of Hill's First Amendment retaliation claim. The first two evidentiary facts that Hill offers (temporal proximity and disparate treatment) have been explicitly recognized by this court as being capable of proving a retaliatory motive. *See Thaddeus-X*, 175 F.3d at 399. And Hill has alleged direct evidence of a retaliatory motive based on purported statements by two McCreary staff members. We must construe these allegations in the light most favorable to Hill at this stage in the proceedings. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Hill's complaint is therefore sufficient to establish the retaliatory-motive element when scrutinized under the failure-to-state-a-claim standard. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). And because Hill's allegations are at least plausible, his complaint also establishes this element without being frivolous. *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989).

## III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the district court's decision to dismiss the complaint, **VACATE** the judgment entered in favor of the defendants, and **REMAND** the case for further proceedings consistent with this opinion.