NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0153n.06

No. 22-1562

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Apr 03, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| PHILLIP TURNER, | ) | |
|     Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| MICHIGAN DEPARTMENT OF CORRECTIONS; HEIDI E. WASHINGTON, Director; SHERRY L. BURT, Warden; DARRELL M. STEWARD, Deputy Warden; DANIEL MILLER, Acting Deputy Warden; CORIZON MEDICAL CORPORATION; DR. DALE E. ASCHE; MICHAEL WILKINSON, Health Unit Manager; NURSING SUPERVISOR ANDERSON, | ) ) ) ) ) ) ) ) ) ) | OPINION |
|     Defendants-Appellees. | ) | |

Before: SUHRHEINRICH, COLE, and MURPHY, Circuit Judges.

MURPHY, J., delivered the opinion of the court in which COLE, J., joined. SUHRHEINRICH, J. (pp. 10–13), delivered a separate dissenting opinion.

MURPHY, Circuit Judge. According to Phillip Turner, the Michigan Department of Corrections forces inmates at a Muskegon prison to climb to the top bunk in their cell by stepping onto a "wobbly" chair and a shaky desk. A doctor initially ordered prison staff to assign Turner to a bottom bunk. But staff later moved him to a top one. As he was getting down from this bunk one day, the desk tipped over. Turner fell, necessitating a trip to the emergency room. In this suit, he alleges that his top-bunk assignment violated the Americans with Disabilities Act (ADA),

42 U.S.C. §§ 12101–12213. Invoking the screening provisions in the Prison Litigation Reform Act, the district court dismissed Turner's suit without serving it on the defendants. The court reasoned that Turner failed to plead that he had a "disability" under the ADA's definition of the term. Yet the court overlooked that the ADA's "disability" definition includes individuals with a "record" of a physical impairment. And Turner plausibly alleged that a doctor had issued an order requiring his bottom-bunk assignment for health reasons. We thus reverse the dismissal of Turner's ADA claim. We remand to allow the district court to consider any renewed motion-to-dismiss arguments in the ordinary course after service on the defendants and adversarial briefing.

I

At this early stage of the case, we must accept the complaint's factual allegations as true whether or not Turner can later prove those allegations with concrete evidence. *See Rudd v. City of Norton Shores*, 977 F.3d 503, 507, 511–12 (6th Cir. 2020).

The Michigan Department of Corrections operates the Muskegon Correctional Facility in western Michigan. Compl., R.1, PageID 1, 10. Prison planners allegedly designed this prison to house one inmate per cell. *Id.*, PageID 10. But prison overcrowding eventually led administrators to place bunk beds in the cells so that each cell could house two inmates. *Id.*, PageID 10, 13.

Because these bunk beds do not include ladders, prisoners must expend significant energy climbing to the top. They must first step onto a "wobbly plastic chair" in the cell. *Id.*, PageID 10. From the chair, prisoners must step up to an "un-secure desk" that "moves" when prisoners shift their weight while standing on it. *Id.* From the desk, prisoners lastly must pull themselves into the top bunk. *Id.* This daily routine increases the risk of an accident when top-bunk prisoners try to get up to and down from their bunk. *Id.*

2

Recognizing this risk, many inmates have requested that administrators attach ladders to the bunk beds so that inmates sleeping in the top bunk can safely climb up and down. *Id.* But administrators have rebuffed these requests with full awareness of the risk that prisoners face. *Id.* Their own prison rules, for example, prohibit inmates from standing on chairs and desks in the "dayroom" and "tv room" due to the safety concerns. *Id.*, PageID 14.

On November 19, 2019, prison administrators placed Turner at this Muskegon facility. *Id.*, PageID 11. During Turner's initial processing, a physician whom Turner identifies as "Dr. Boomershine" ordered prison staff to give him a bottom bunk. *Id.* Nurses gave Turner a copy of Dr. Boomershine's bottom-bunk detail. *Id.* They also told him that medical staff had assigned him a "'chronic care' status" and that a doctor would see him soon. *Id.*

But Turner's assignment changed just two weeks later. Staff moved him to a top bunk despite Dr. Boomershine's orders. *Id.* When Turner complained, staff responded that they needed the bottom bunk for an inmate with more serious health issues. *Id.* Turner later saw another doctor and he too denied a bottom-bunk assignment without consulting Dr. Boomershine. *Id.* The warden also ignored Turner's request for a bunk-bed ladder at an open forum with prisoners. *Id.* The prison forced Turner to sleep in a ladder-less top bunk for months. *Id.*

On July 10, 2020, Turner got out of his bunk by stepping onto the desk. *Id.* As he did so, the desk tipped over. *Id.* Turner fell, slamming into the desk and chair on his way to the ground. *Id.*, PageID 11–12. His posterior allegedly "split" during this fall. *Id.* Turner's severe injuries required prison staff to take him to the emergency room. *Id.*, PageID 12. On his return to the prison, Turner could not walk on his own. *Id.* The prison provided him with crutches. *Id.*

After Turner's fall, a prison counselor repeatedly asked administrators to give Turner a bottom bunk. *Id.* They denied these requests and continued to force an injured Turner to climb to

the top. *Id.* Although administrators eventually assigned Turner to a bottom bunk for a short time, they soon moved him back to the top. *Id.* At another open meeting with the warden, Turner renewed his request for a secure ladder. This time, the warden allegedly responded that the prison lacked the funds to pay for bunk-bed ladders. *Id.*, PageID 12–13.

Turner chose to sue over the issue. In his pro se complaint, he asserted constitutional claims under 42 U.S.C. § 1983, a disability claim under the ADA, and claims under state law. *Id.*, PageID 14–16. Turner asked for damages against several defendants, including the Michigan Department of Corrections and various state employees at the Muskegon prison. *Id.*, PageID 2–4, 15.

The district court dismissed Turner's complaint without serving the defendants. *See Turner v. Mich. Dep't of Corr.*, 2022 WL 2071729, at *8 (W.D. Mich. June 9, 2022). As relevant now, the court rejected Turner's ADA claim because his complaint failed to plead that he had a disability. *Id.* at *6. The court also held that the complaint failed to allege that prison officials had denied Turner a public service, program, or activity in violation of the ADA. *Id.* at *7. Turner, with the help of newly retained counsel, appeals the dismissal of his ADA claim.

II

The Prison Litigation Reform Act directs district courts to screen prisoner complaints before serving them on government defendants. 28 U.S.C. § 1915A(a). A court must immediately dismiss a complaint if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]" *Id.* § 1915A(b)(1). The court also must immediately dismiss a complaint if it "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b)(2); *see* 42 U.S.C. § 1997e(c) (prisoner complaints); 28 U.S.C. § 1915(e)(2) (in forma pauperis complaints).

When a district court dismisses a complaint without hearing from a defendant, we follow the standards that would apply if the court had served the defendant and granted its motion to dismiss after full briefing. *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). We thus review the court's dismissal de novo. *See Grinter v. Knight*, 532 F.3d 567, 571–72 (6th Cir. 2008). When doing so, we disregard a complaint's legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But we accept its factual allegations. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). And we ask whether the alleged facts plead a plausible claim for relief after making all reasonable inferences in the prisoner's favor. *See Iqbal*, 556 U.S. at 678. We lastly hold a pro se prisoner's pleadings to "less stringent standards" than the standards that govern a trained lawyer's pleadings. *Erickson*, 551 U.S. at 94 (citation omitted).

Under these pleading rules, Turner's factual allegations did not justify the district court's immediate dismissal of his ADA claim. The ADA protects individuals with disabilities in the employment context, the government-services context, and the public-accommodations context. *See Madej v. Maiden*, 951 F.3d 364, 372 (6th Cir. 2020). Title II's government-services provision provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. This provision applies to the "services," "programs," and "activities" of state prisons. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210, 213 (1998).

We (and the Attorney General) have read Title II's text to impose two general requirements on public entities. *See Keller v. Chippewa Cnty., Mich. Bd. of Comm'rs*, 860 F. App'x 381, 385 (6th Cir. 2021); *Roell v. Hamilton County*, 870 F.3d 471, 488 (6th Cir. 2017); 28 C.F.R. § 35.130(b). A government may not intentionally discriminate against people with disabilities by

denying public services to an individual because of the individual's disability. *See Roell*, 870 F.3d at 488. And the government generally must grant a disabled individual a "reasonable modification[]" to its policies or practices when the individual needs the modification to receive public services. 28 C.F.R. § 35.130(b)(7)(i); *cf. Madej*, 951 F.3d at 372.

These requirements apply only if the individual who seeks the public services has a "disability." 42 U.S.C. § 12132. The ADA defines "disability" in three ways. *See id.* § 12102(1)(A)–(C). The statute's primary definition covers any individual who has "a physical or mental impairment that substantially limits one or more major life activities" of the individual. *Id.* § 12102(1)(A). Its "disability" definition then goes on to reach individuals who have "a record of such an impairment" or who are "regarded as having such an impairment[.]" *Id.* § 12102(1)(B)– (C); *see Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 522–23, 523 n.7 (6th Cir. 2021).

The district court dismissed Turner's complaint on the ground that he failed to plead that he suffered from an "impairment" under the ADA's primary "disability" definition. *Turner*, 2022 WL 2071729, at *6. In the abstract, we might agree that Turner failed to adequately plead an actual "impairment," at least at the time that he entered the Muskegon facility. *See* 28 C.F.R. § 35.108(b). The complaint alleged that he had "serious medical problems" and that doctors had given him a "'chronic care' status," but it did not identify his medical problems or the reasons for his "chronic care" classification. Compl., R.1, PageID 11.

Yet we need not decide this issue. The district court did not evaluate whether Turner might fit within the ADA's separate "disability" definition for individuals who have a "record" of an impairment. 42 U.S.C. § 12102(1)(B); 28 C.F.R. § 35.108(e). And the complaint alleged facts that could suggest that Turner had such a record. *See Hill*, 630 F.3d at 471. It alleged that "Dr. Boomershine" ordered prison staff to give Turner a bottom-bunk detail. Compl., R.1, PageID 11.

It also suggested that staff gave Turner a copy of this order. *Id.* Because this "medical note[]" came from a doctor, one could plausibly infer that the order stated that Turner's conditions limited his ability to climb to the top bunk. *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 301 n.7 (6th Cir. 2019); *see Epley v. Gonzalez*, 860 F. App'x 310, 313–14 (5th Cir. 2021) (per curiam).

To be sure, the complaint later alleged that prison staff moved Turner to a top bunk when a new inmate needed the bottom one. Compl., R.1, PageID 11. According to the district court, this allegation showed that staff decided that Turner no longer had an impairment requiring a top bunk. *Turner*, 2022 WL 2071729, at *6. But this response again overlooks that the ADA's "disability" definition covers not just those who have an ongoing impairment but also those who have a record of an impairment. Besides, one could read Turner's allegations to assert that staff made this change for reasons unrelated to any health improvement. He alleged that the prison suffered from overcrowding and that administrators refused to put ladders on bunks for cost reasons. Compl., R.1, PageID 12–13. The complaint thus suggests that staff moved Turner to a top bunk not because of a change in his health but because the prison did not have enough bottom bunks to go around. And although a different doctor later allegedly denied Turner a bottom-bunk detail, the complaint alleges that this doctor refused to consult with Dr. Boomershine and ignored Turner's "serious medical problems" when doing so. *Id.*, PageID 11.

In sum, the district court "provided no analysis" as to why Turner's pro se allegations did not fit within the record-of-impairment definition of "disability" in the ADA. *Morrissey*, 946 F.3d at 301 n.7. That error alone requires us to vacate its decision. *See id.*

Given this conclusion, we need not consider Turner's alternative argument that his complaint pleaded that he had an actual impairment after his fall when he needed crutches. *Cf. Hamilton v. Westchester County*, 3 F.4th 86, 91–95 (2d Cir. 2021). The district court rejected this

theory on the ground that Turner did not identify the nature of the injury (for example, was it a broken leg or a sprained ankle?). *Turner*, 2022 WL 2071729, at *6. Yet this pleading issue may well become irrelevant on remand. Turner's newly retained counsel stated at oral argument that he planned to file an amended complaint to clarify the nature of Turner's ADA claim. Arg. at 9:30–:45. The civil rules might suggest that Turner has an automatic right to do so at this early stage. *See* Fed. R. Civ. P. 15(a)(1). But we will leave the proper procedure from this stage forward for the district court on remand.

We also need not "reach the other aspects" of Turner's ADA claim, so our conclusion does not necessarily establish that Turner's complaint sufficed. *Hamilton*, 3 F.4th at 95. After all, the ADA's text suggests that an "impairment" must also "substantially limit[]" at least one "major life activit[y]." 42 U.S.C. § 12102(1)(A); 28 C.F.R. § 35.108(a)(1)(i), (ii). The ADA defines "major life activities" to cover many daily tasks, including physical activities such as "walking," "standing," "lifting," "bending," and "working." 42 U.S.C. § 12102(2)(A). We have treated this statutory list as non-exhaustive. *See Harrison v. Soave Enters. L.L.C.*, 826 F. App'x 517, 525 (6th Cir. 2020); *Darby v. Childvine, Inc.*, 964 F.3d 440, 445 (6th Cir. 2020). Perhaps Turner has adequately alleged that his recorded conditions substantially limited his "climbing" ability. And perhaps climbing should count as a "major life activity" like "standing" or "bending." As far as we can tell, though, we have yet to resolve this question. *Cf. Dunaway v. Ford Motor Co.*, 134 F. App'x 872, 877–78 (6th Cir. 2005). We do not think it proper to decide the issue "at this stage" without giving the defendants a chance to provide their views on the topic. *Briscoe v. Mohr*, 2020 WL 1813660, at *2 (6th Cir. Mar. 16, 2020) (order).

Apart from its holding that Turner did not plausibly plead an impairment, the district court also concluded in one sentence that he failed to plead that he had been denied access to a prison

"service[]," "program[]," or "activit[y]." 42 U.S.C. § 12132; *see Turner*, 2022 WL 2071729, at *7. Yet the plain meaning of the phrase "services, programs, or activities" "encompasses virtually everything that a public entity does." *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998); *but cf. Babcock v. Michigan*, 812 F.3d 531, 535–40 (6th Cir. 2016). In the prison context, then, the Supreme Court has suggested that the phrase can include shower and bathroom services. *See United States v. Georgia*, 546 U.S. 151, 157 (2006); *see also Stansell v. Grafton Corr. Inst.*, 2019 U.S. App. LEXIS 24597, at *2–3 (6th Cir. Aug. 16, 2019) (order). And we have suggested that it can include dining and visitation services. *See Douglas v. Muzzin*, 2022 WL 3088240, at *7 (6th Cir. Aug. 3, 2022); *Stansell v. Grafton Corr. Inst.*, 2020 U.S. App. LEXIS 25982, at *3 (6th Cir. Aug. 14, 2020) (order). Perhaps the provision of sleeping quarters can qualify when a prisoner's health conditions make it "extremely difficult and painful for him" to climb to the top bunk. *Stansell*, 2020 U.S. App. LEXIS 25982, at *3. But again, we do not think it proper to decide this issue without adversarial briefing from the defendants. *See Briscoe*, 2020 WL 1813660, at *2.

At day's end, the district court's rationale for dismissing Turner's claim fell short. So we reverse and remand for proceedings consistent with this opinion.

SUHRHEINRICH, J., dissenting. Phillip Turner claims that officials at the Muskegon Correctional Facility failed to accommodate his disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213. It was thus his burden to plead facts plausibly establishing that he was disabled for his ADA claim to pass initial review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A. Turner could have accomplished that task by naming his alleged physical impairment in his complaint. But he did not. Turner could have described his purported physical limitations in his complaint. He did not do that either. Unlike the majority, I am unable to overlook the deficiencies in Turner's complaint, even under the forgiving treatment we afford pro se filings. I respectfully dissent.

The ADA defines a disability as: (1) a "physical or mental impairment that substantially limits one or more major life activities of such individual"; (2) "a record of such an impairment"; or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Turner argues he alleged sufficient facts to meet the actual and record-of-impairment definitions of disability. "A record of an impairment means an individual has 'a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.'" *Koch v. Thames Healthcare Grp., LLC*, 855 F. App'x 254, 259 (6th Cir. 2021) (quoting *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 339 (6th Cir. 2002)); *see also* 28 C.F.R. § 35.108(e)(1). Thus, to state a claim under either definition, Turner must have alleged facts plausibly establishing not only that he had, or was classified as having, an impairment, but also that such impairment "substantially limit[ed] one or more major life activity." *Neely v. Benchmark Fam. Servs.*, 640 F. App'x 429, 432–33 (6th Cir. 2016) (quoting 42 U.S.C. § 12101(1)(A)).

The majority faults the district court for neglecting to analyze the "record-of-impairment" definition and hopes to avert analysis of the "actual impairment" definition. Either way, Turner's

complaint is lacking because it provides no facts from which we can *reasonably and plausibly* infer that Turner was disabled under the ADA.

For starters, Turner's complaint does not specifically identify the medical condition that prompted Dr. Boomershine to issue a bottom bunk detail. Turner says that he was assigned a "'chronic care' status," but "chronic" can refer to any health issue "lasting a long time." Chronic, Stedmans Medical Dictionary (2014). Because "chronic" describes the duration of a medical condition (e.g., chronic asthma, chronic arthritis, chronic eczema), not a medical condition itself, Turner's use of the phrase "chronic care status" is simply a meaningless allegation. Without naming his impairment, Turner's disability allegation is mere speculation. *See Fritz v. Michigan*, 747 F. App'x 402, 405 (6th Cir. 2018) (explaining that the plaintiff failed to plead a cognizable disability because she "neglect[ed] to give her disability a name" and alleged "no facts that describe[d] the nature of her disability").

I also think it is unreasonable for the majority to infer that Dr. Boomershine's bottom bunk "order stated that Turner's conditions limited his ability to climb to the top bunk." Maj. Op., at 6. Such an inference assumes that Dr. Boomershine's bottom bunk order was part of the doctor's plan to treat Turner's unknown condition (and not a courtesy extended to Turner). A prison doctor's treatment order instructs prison healthcare staff on how to care for the prisoner and alerts officials to risk factors associated with the prisoner's diagnosis. Dr. Boomershine's treatment orders necessarily included such detail (otherwise his instructions would be useless). If Dr. Boomershine thought Turner needed a bottom bunk because Turner had mobility limitations, the doctor's notes would say so. But Turner omitted such documentation from his complaint and makes no claim that Dr. Boomershine prescribed him treatment for any type of physical ailment, let alone treatment that included a bottom bunk order. Without such facts, Turner's allegation of

impairment does not rise "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

If Dr. Boomershine truly found Turner physically impaired, one would expect that other prison healthcare providers would similarly evaluate Turner. But the second prison doctor who evaluated Turner, Dr. Dale Asche, denied Turner's bottom bunk requests. Compl., R.1, PageID 11. That suggests Dr. Asche did not think Turner had any physical disability. Prison officials had every right to rely on Dr. Asche's opinion that Turner's bottom bunk request was not medically necessary; thus, the prison lacked notice that Turner had a disability regardless of what Dr. Boomershine's order said. *See Cady v. Remington Arms Co.*, 665 F. App'x 413, 417 (6th Cir. 2016) ("Relevant information [indicating that the plaintiff had a disability] could include, among other things, a diagnosis, a treatment plan, apparent severe symptoms, and physician-imposed work restrictions."); *Huge v. Gen. Motors Corp.*, 62 F. App'x 77, 79–80 (6th Cir. 2003) ("Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA." (quoting *Morisky v. Broward County*, 80 F.3d 445, 448 (11th Cir. 1996))).

Turner's allegations concerning his fall from the top bunk do not permit an inference that he suffered from a disability either. In his complaint, Turner acknowledges that he ascended and descended to and from his top bunk incident free for seven months prior to his fall. Compl., R.1., PageID 11–12. When describing his fall, he makes no claim that it was caused by his physical limitations; instead, he pins his fall, and subsequent injuries, on the rickety chair and table. *Id.*, PageID 10–12. Such facts might give rise to a negligence claim, but the unsafe prison conditions that he blames for his fall do not also support his assertion that he was disabled. Because we are bound to accept Turner's factual allegations as true, we cannot infer that his fall was attributable

to some unknown physical impairment. *See Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (the motion-to-dismiss standard requires us to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all *reasonable* inferences in favor of the plaintiff" (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)) (emphasis added)).

Turner also contends that his use of prison-approved crutches following his fall from the top bunk plausibly establishes that he was disabled. But again, as the majority acknowledges, Turner did not specifically describe the nature of his injury beyond his need for crutches to ambulate. Plenty of injuries might require crutches, but not all injuries substantially limit a major life activity. *See* 28 C.F.R. § 35.108(d)(v) ("An impairment does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section."). Without elaborating on the severity of his injury, Turner's complaint, at most, suggests the *possibility* that he was disabled where *plausibility* was required. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To me, the district court appropriately dismissed Turner's inadequate ADA claim given the PLRA's instruction that "the court *shall* . . . dismiss [a prisoner's] complaint . . . [that] fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1) (emphasis added).