**NOT RECOMMENDED FOR FULL-TEXT PUBLICATON**

File Name: 18a0506n.06

No. 17-3367

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| KEVIN A. TOLLIVER, | ) | |
| **Plaintiff–Appellant,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY NOBLE, Warden; DWO | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| TAYLOR; INVESTIGATOR CHRISTLER; | ) | |
| INVESTIGATOR SIBALSKI; INSPECTOR | ) | |
| BLACKWELL; LT. WEBB; LT. | ) | |
| WESTFALL; SGT. LEVAN; C.O. PYLES, | ) | |
| **Defendants–Appellees.** | ) | **OPINION** |
| | ) | |

Before: SUHRHEINRICH, MOORE, and BUSH, Circuit Judges

**KAREN NELSON MOORE, Circuit Judge.** Kevin A. Tolliver appeals the district court's sua sponte dismissal of his pro se prisoner civil rights complaint under 42 U.S.C. § 1983. Because we determine that the district court abused its discretion by failing to provide plaintiff with leave to amend his complaint, we REVERSE the district court's dismissal and REMAND with instructions to permit Tolliver to amend his complaint.

**I. BACKGROUND**

The following facts are taken from Tolliver's initial pro se filing[1], marked by the district court clerk as his "Complaint" on the docket. *See* R. 1.[2] Tolliver is an inmate in the custody of

---

[1]Although Tolliver is now represented by counsel on appeal, he acted pro se throughout the district court proceedings at issue in this case.

[2]As will be discussed in further detail below, Tolliver did not entitle the document filed at Record 1 as his "Complaint." Rather, it appears the Clerk of Court designated it as such. As filed,

the Ohio Department of Rehabilitation and Corrections ("ODRC"). While incarcerated, Tolliver successfully requested that an independent contractor providing inmates with religious services be removed. *Id.* ¶ 9 (Page ID #4). However, after being transferred to the London Correctional Institution ("London"), Tolliver again encountered the same contractor. *See id.* ¶ 12 (Page ID #5). Tolliver notified Blackwell, a prison employee, regarding his previous history with the contractor and explained that he did not require the contractor's religious services. *Id.* Blackwell assured Tolliver that there was no problem. *Id.*

However, the contractor later filed a "false report" in an attempt to raise Tolliver's security status. *Id.* On September 6, 2016, Tolliver was placed in segregated housing. *Id.* ¶ 1 (Page ID #2). Tolliver claims his placement in segregated housing was "an act of retaliation for [F]irst Amendment protected conduct (i.e. grievances which resulted in a contractor for religious services being terminated)" and asserts his "due process rights have been violated by a flawed DRC 2099 form which among other facts created an invalid transfer hearing." *Id.* ¶ 9 (Page ID #4).

Tolliver claims that on the same day he was placed in segregated housing, prison officials confiscated various legal documents "full of current criminal and civil files," including "critical items of New Evidence, Original Affidavits, [his] 3500 page transcript [for his criminal trial], notes and irreplaceable research." *Id.* ¶¶ 2, 22 (Page ID #2, 7–8). These files related to his criminal conviction, which he has been "actively fighting" for fifteen years, as well as an "active [§] 2244 petition" and a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"),

---

Record 1 is entitled "Notice of Denial of Access to Court and Emergency Request for Order Directing Access." R. 1 at Page ID #1.

which he intended to file. *Id.* ¶ 22 (Page ID #7–8); *see also id.* ¶ 27 (Page ID #9) (explaining that his denial of access "rel[ie]ves [him] of the evidence for his RLUIPA claim challenging 72 REG 1 thr[ough] 12"). Tolliver asserts that because he does not have access to these documents, "[h]e has been unable to fairly defend transfer, or perform any act of research, nor proper filing." *Id.* ¶ 22 (Page ID #8).

Tolliver asserts that prison officials told him that his placement in segregated housing was "not disciplinary" and that he had done nothing wrong. *Id.* ¶ 10 (Page ID #4). Following his placement in segregated housing, prison officials informed Tolliver that, because of his "nexus" with the religious contractor, he would need to be transferred from London.[3] *See id.* ¶¶ 11–12 (Page ID #5) (explaining that he has seen a "nexus used as an abuse of process" and that, in his case, the nexus was unwarranted because he had not interacted with the contractor since coming to London and the contractor had not requested the nexus but, rather, had filed a "false report" against Tolliver).

On October 20, 2016, Tolliver was taken to view both his investigatory documents, as well as his personal property, all of which had been seized when he was placed in segregated housing. *Id.* ¶ 16 (Page ID #6). When Tolliver noticed that none of his investigatory documents were included, he filed a theft/loss report on October 21, 2016. *Id.* ¶ 17 (Page ID #6). Tolliver was subsequently transferred from London to Pickaway Correctional Institute, where he now resides. *See* R. 8 (Notice of Change of Address). Tolliver asserts that Defendants "Noble, Taylor, Christler,

---

[3]A "nexus" is a preexisting relationship between an inmate and a prison official, including independent contractors. *See* Ohio Dep't of Rehab. & Corr., Policy No. 31-SEM-07.

Sibalski, Webb, Westfall and Levant all intend I be transferred without my 'investigator's pack-up' [b]ecause: 1.) it's punishment, 2.) it rel[ie]ves [me] of the evidence for [my] RLUIPA claim challenging 72 REG 1 thr[ough] 12, and 3.) will cripple my criminal appeals." R. 1 (¶ 27) (Page ID #9).

On October 25, 2016, Tolliver filed five documents with the district court. The document labeled "Complaint" on the docket was in fact entitled "Notice of Denial of Access to Court and Emergency Request for Order Directing Access." *See* R. 1. In the order of how they appear on the district court's docket, Tolliver also filed: a "Motion for Temporary Restraining Order" (entitled "Motion to Come Forth and Show Cause: Emergency Temporary Restraining Order" by Tolliver), *see* R. 2; a "Judicial Notice" (entitled as such by Tolliver), *see* R. 3; a "Supplemental Affidavit" (entitled "Supplemental Affidavit and Notice of Appeal Rights Violation in Transfer" by Tolliver), *see* R. 4; and a "Motion for Respondent to Provide Documents to the Court" (entitled as such by Tolliver), *see* R. 5. On November 22, 2016, Tolliver also filed a "Notice of Transfer to Pickaway Correctional Institute, Partial Return of Investigator's Pack-Up, Continuation of Retaliation." *See* R. 7. This document included seven exhibits. *Id.* Finally, in response to an order from the magistrate judge, Tolliver filed a motion for leave to proceed in forma pauperis on November 23, 2016. *See* R. 9.

On January 13, 2017, the magistrate judge filed a Report and Recommendation, recommending that the district court deny Tolliver's two motions (i.e., his motion requesting Defendants provide certain documents, R. 5, and his motion for a temporary restraining order, R. 2) and also dismiss the complaint. R. 11. Specifically, after conducting an initial screening per

28 U.S.C. § 1915A(a)[4], the magistrate judge recommended finding that the court lacked jurisdiction to hear Tolliver's complaint, stating that Tolliver "cites no laws, statutes, or general legal principles" regarding the court's jurisdiction. *Id.* at 2 (Page ID #85). Second, the magistrate judge reasoned that Tolliver had failed to state a claim upon which relief could be granted, noting "it is unclear what [Tolliver]'s legal basis is for this lawsuit involving the 'investigator packups'" and therefore "Defendants have no notice of the law or laws they allegedly violated." *Id.* at 3–4 (Page ID #86–87). The magistrate judge also determined that, because prison officials cannot be liable under § 1983 for failing to remedy an alleged constitutional violation, Tolliver's claims failed. *Id.* at 4 (Page ID #87). Finally, the magistrate judge noted that although Tolliver mentioned "a potentially cognizable legal claim" in relation to his First Amendment and Due Process Clause rights, "this allegation is not supported by any factual allegations in the Complaint" and should be dismissed. *Id.* at 5 (Page ID #88). Although the magistrate judge noted the additional documents that Tolliver filed on October 25, 2016, the Report and Recommendation considered only the allegations contained in the "Complaint." *See generally* R. 11.

On January 24, 2017, Tolliver signed and mailed his objections to the Report and Recommendation, in which he surmised that the court had not yet received his "Notice and Motion for Leave to Amend Complaint" or "Amended Complaint," which he asserted he had placed in the prison mail system on January 12, 2017. R. 12 (Page ID #90). Tolliver explained that the amended

---

[4]28 U.S.C. § 1915A(a) provides: "The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."

complaint "addresses the deficiencies of the original 'Motion to Come Forth and Show Cause: Emergency Temporary Restraining Order'" and noted that without the TRO, he "did suffer *all* damages." *Id.*[5] Tolliver included an affidavit, in which he stated he had mailed the amended complaint on January 12, 2017 and that he intended to file the amended complaint again. *Id.* at 2 (Page ID #91). Tolliver also explained that "[p]rior to the recommendation the defendants did what I sought to be protected from and violated my U.S. Constitutional Rights under the First, Eighth, and Fourteenth Amendments." *Id.* Finally, Tolliver attached to his objections a "Notice and Filing Of: Motion for Leave to Amend Complaint." *Id.* at 4 (Page ID #93). The notice was dated January 11, 2017 and requested that the court "accept the enclosed amended complaint for the original filings[, which] were prepared under known hardship and likely failed to meet basic standards of sufficiency." *Id.*

Rather than file the aforementioned amended complaint, on February 13, 2017, Tolliver signed and mailed a "Motion for Extension of Time (30 Days to Amend Complaint)," docketed on February 17, 2017. R. 13. Tolliver asserted that, since filing his previous Notice (and objections) on January 30, 2017, "the Chief Inspector of the ODRC has provided new answers to additional issues directly affecting the matter sub judice," and thus he needed additional time to file an amended complaint. *Id.* at 1 (Page ID #95). Tolliver requested thirty additional days to "properly amend[ ]" his complaint. *Id.*

---

[5]Tolliver also explained that although his TRO request had been docketed at Record 2, he had actually sent that document before the "Complaint," filed at Record 1. *See* R. 12 at 2 (Page ID #91).

On March 8, 2017, the district judge filed an order adopting the magistrate judge's Report and Recommendation. R. 14. Noting Tolliver's objections, the district court "consider[ed] the matter *de novo*." *Id.* at 1 (Page ID #97). The district judge explained, however, that while Tolliver argued he "filed a Motion to Amend his Complaint, [he] actually . . . has filed a Motion for Extension of Time to file an Amended Complaint, which has been received and docketed by the Court as ECF No. 13." *Id.* Determining that Tolliver's "objections present the same issues presented to and considered by the Magistrate Judge," the district court concluded Tolliver "failed to establish any basis for reconsideration of the Magistrate Judge's conclusions that his Complaint fails to state a claim which relief may be granted by this Court." *Id.* at 2 (Page ID #98). Consequently, the district court adopted the Report and Recommendation and overruled Tolliver's objections, dismissing the complaint and denying Tolliver's motion for extension of time to file his amended complaint as moot. *Id.*

On March 22, 2017, the district court docketed Tolliver's "Motion for Leave to File an Amended Complaint," to which he attached a thirty-page amended complaint; the motion was signed and mailed by Tolliver on March 9, 2017. *See* R. 16 (Mot. to Amend); R. 16-1 (Am. Compl.). On March 24, 2017, the magistrate judge denied his motion, explaining "[b]ecause final judgment has been entered in this action, [Tolliver]'s Motion is DENIED. [Tolliver] is instructed that no further filings shall be made in this case." R. 17 at 1 (Page ID #132). This timely appeal followed.[6]

---

[6]Although the district court denied Tolliver's motion to appeal in forma pauperis, certifying that his appeal was not taken in good faith, *see* R. 21, we permitted Tolliver to proceed with his appeal in forma pauperis, additionally noting that "[i]n light of the relative complexity of some of

On appeal, Tolliver makes two arguments. First, Tolliver asserts that the district court erred when it sua sponte dismissed his case for failure to state a claim, arguing that 1) the district court did not consider Tolliver's additional documents on the docket, which he contends provide further factual support for his legal allegations; and 2) standing alone, the document labeled "Complaint" sufficiently stated a plausible claim for relief. Appellant Br. at 23–36. Second, Tolliver contends the district court abused its discretion by not permitting him to file an amended complaint, despite his multiple efforts to do so, both before and after final judgment was issued. *Id.* at 36–42. Because we determine that the district court abused its discretion by failing to allow Tolliver to amend his complaint, we need not consider the sufficiency of his original filings.

## II. JURISDICTION

Despite what the magistrate judge recommended, the district court had subject matter jurisdiction over Tolliver's complaint, as Tolliver explicitly raised claims asserting a denial of his access to the courts, a violation of his Due Process rights, and retaliation under the First Amendment.[7] *See* R. 1 (¶ 9) (Page ID #1, 4) (asserting that Defendants "have continued to deny access to the court by not giving permission to see, use, or know the location of" his legal materials and explaining that his placement in segregated housing "is an act of retaliation for [F]irst

the issues presented in this appeal, Tolliver should proceed with appointed counsel." *See* D. 17 (6th Cir. Order, December 14, 2017) (Page 1).

[7]As Tolliver's counsel notes, the district court did not rely upon this jurisdictional concern as a basis to dismiss Tolliver's complaint. Rather, the district court examined only whether Tolliver had stated a plausible claim for relief. *See* R. 14 at 2 (Page ID #98) (explaining in its conclusion that "Plaintiff's Complaint is hereby DISMISSED for failure to state a claim").

Amendment protected conduct" and that his "due process rights have been violated"). Those claims all "aris[e] under the Constitution . . . of the United States" and thus establish subject matter jurisdiction, despite Tolliver's failure explicitly to state this in a jurisdictional section. 28 U.S.C. § 1331; *see also Smith Barney, Inc. v. Sarver*, 108 F.3d 92, 95 (6th Cir. 1997) (determining diversity jurisdiction existed despite the plaintiff's failure to "affirmatively allege diversity jurisdiction"), *abrogated on other grounds by Vaden v. Discover Bank*, 556 U.S. 49 (2009); *City of Detroit Pension Fund v. Prudential Secs., Inc.*, 91 F.3d 26, 29–30 (6th Cir. 1996) (finding the district court had diversity jurisdiction based on the facts "in the record," even though the district court had erroneously determined it had federal question jurisdiction). Defendants do not contest that the district court had subject matter jurisdiction based on Tolliver's clearly articulated federal claims.

Moreover, we have appellate jurisdiction. Specifically, the district court granted final judgment on all of Tolliver's claims on March 8, 2017, dismissing his complaint. R. 15 (Page ID #99). Tolliver filed a timely notice of appeal with this court on April 7, 2017, which was docketed on April 11, 2017. *See* R. 18; *see also* Fed. R. App. P. 4(a)(1)(A) (explaining that a party in a civil case has thirty days after entry of judgment to file an appeal); Fed. R. App. P. 4(c)(1)(A), (B) (explaining that an inmate in prison is deemed to have filed his appeal on the date the appeal is deposited in the prison's internal mail system, provided either the inmate includes "a declaration . . . setting out the date of deposit and stating that first-class postage is being prepaid" or "the court of appeals exercises its discretion to permit the later filing of a [satisfactory] declaration"). Tolliver's notice of appeal, dated April 7, 2017, stated "[b]y turning them over to the internal mail

system here at [Pickaway Correctional Institute] with first class U.S. postage paid by me." R. 18 (Page ID #133). Thus, we have appellate jurisdiction under 28 U.S.C. § 1291.

### III. STANDARD OF REVIEW

We review for abuse of discretion a district court's denial of leave to amend a complaint. *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 781 (6th Cir. 2015). However, following an adverse judgment, plaintiffs seeking to amend must "shoulder a heavier burden." *Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010). Additionally, although "[t]he decision to dismiss with prejudice is a harsh sanction, [because] the choice lies within the discretionary power of the district court, . . . we will not reverse absent a clear showing of abuse of discretion." *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 495 (1990); *see also Printup v. Dir., Ohio Dep't of Job & Family Servs.*, 654 F. App'x 781, 791 (6th Cir. 2016) (determining the district court did not abuse its discretion in dismissing the plaintiff's complaint with prejudice after concluding that the plaintiff's "claims were barred by the statute of limitations such that any amendment would have been futile and where [the plaintiff] had not sought to amend her complaint in any event"). Finally, district courts must afford pleadings filed by pro se plaintiffs additional leniency, given their unfamiliarity with pleading and procedural requirements. *See Neitzke v. Williams*, 490 U.S. 319, 330 (1989) (noting "indigent plaintiffs so often proceed *pro se* and therefore may be less capable of formulating legally competent initial pleadings"); *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) ("*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers' and should therefore by liberally construed." (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004))).

10

## IV. DISCUSSION

The key question on appeal is whether the district court abused its discretion in denying Tolliver leave to amend. Tolliver contends that the district court erred when it dismissed Tolliver's complaint for failure to state a claim and then denied as moot his motion for extension of time to file an amended complaint. Appellant Br. at 36–41. Additionally, Tolliver maintains that the district court should have considered his amended complaint, which was filed after final judgment was issued, as a motion to set aside or vacate judgment under Rule 59(e) or a motion for relief from judgment under Rule 60(b). *Id.* at 42. Defendants contend that because Tolliver's motion to amend came after judgment had been entered and he had not first filed a motion to alter, set aside, or vacate judgment, the magistrate judge did not abuse its discretion by denying Tolliver's motion to amend. Appellee Br. at 30–34. Furthermore, Defendants assert that because Tolliver had not attached an amended complaint before the district court's dismissal order, the court did not abuse its discretion when it dismissed Tolliver's complaint. *Id.* at 32–33. We conclude that given Tolliver's previous request to amend his complaint before final judgment, the district court's failure to consider Tolliver's additional filings before dismissing his complaint, and the timing of his motion to amend after judgment, the district court abused its discretion when it dismissed Tolliver's complaint while simultaneously denying Tolliver's motion for an extension of time to amend as moot. We consider each issue in turn.

### A. Motion for Extension of Time to Amend & Amended Complaint

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within . . . 21 days after serving it" or within twenty-one days after service of a

responsive pleading or certain motions. "In all other cases, . . . [t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(1)–(2). Additionally, since "[t]he [Prison Litigation Reform Act]'s screening requirements—28 U.S.C. §§ 1915A(b)(1) & 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1)—say nothing about whether a district court can allow a prisoner to amend his complaint," we have held that courts may grant leave to amend even if the inmate's complaint is otherwise subject to dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Jones v. Bock*, 549 U.S. 199, 214 (2007) ("[T]he PLRA's screening requirement does not—explicitly or implicitly—justify deviating from the usual procedural practice beyond the departures specified by the PLRA itself.").

In the present case, Defendants do not contend that they were ever served with Tolliver's original filings. Additionally, Defendants never responded to Tolliver's filings or filed any motion under Federal Rule of Civil Procedure 12. Thus, Tolliver was free to file an amended complaint as a matter of right at any time before his complaint was dismissed. *See* Fed. R. Civ. P. 15(a)(1). However, before judgment was issued, Tolliver filed motions for leave to amend his complaint and a motion for an extension for leave to amend, rather than an amended complaint. Therefore, although the court below did not consider the applicability of Rule 15(a) to Tolliver's claims, we will limit our consideration to Tolliver's motions regarding his amended complaint.

Our review of the record before us indicates that, despite Defendants' contentions, Tolliver attempted to amend his complaint on at least two occasions before the district court sua sponte dismissed his case. First, in his objections to the Report and Recommendation signed on January 24, 2017, Tolliver explained that although the court had apparently not received his previously

12

mailed "Notice and Motion for Leave to Amend Complaint" and his "Amended Complaint," he intended to promptly resend the amended complaint. *See* R. 12 at 1–2 (Page ID #90–91). In support of this, Tolliver attached a motion for leave to amend his complaint (signed January 11, 2017), explaining that "because these first documents were meant to prevent a harm that has now occurred, but the same issues and relief must continue in a modified posture, Plaintiff requests the court grants this amendment freely." *Id.* at 4 (Page ID #93). Thus, Tolliver not only noted that the amended complaint would cure the "deficiencies" of his previous filings, but explained the reason for the requested amendment (his conditions had changed, i.e., he had been transferred, and his previous request for a TRO did not fully respond to his current needs). *Id.* at 1–4 (Page ID #90–93).

It is true that Tolliver did not send the promised amended complaint following his objections and his motion for leave to amend. However, on February 13, 2017 (three weeks after sending his objections and motion to amend), Tolliver filed a motion for extension of time to file his previously described amended complaint. R. 13. Tolliver again explained the reasoning for his delay: "the Chief Inspector of the ODRC has provided new answers to additional issues directly affecting the matter sub judice. These answers have effectively changed the exhaustion date on inextricably linked issues to January 20, 2017. Also, additional names and addresses of parties currently named as John and/or Jane Doe Defendants have become known." *Id.* at 1 (Page ID #95). Tolliver specifically asked for thirty additional days "to provide the court with this properly amended complaint." *Id.*

Rather than responding either to Tolliver's request for leave to amend his complaint (attached to his objections) or his request for an extension of time to file an amendment, the district court dismissed Tolliver's complaint on March 8, 2017 and denied his motion for an extension of time to amend as moot. R. 14.[8] This was before the thirty days Tolliver had requested within which to file his amendment. Furthermore, on March 9, 2017, after the district court dismissed his case but before Tolliver conceivably received the notice, Tolliver (apparently working under the reasonable conclusion that his motion for an extension of time had not been denied) signed a "Notice and Filing of the Original: Amended Complaint," and attached a thirty-page amended complaint. *See* R. 16 (Page ID #100) ("Now comes plaintiff . . . pursuant to the February 13, 2017 request for extension of time to amend complaint, and files said document. Since plaintiff has not received a ruling upon that request, and he is unclear of the specifics of procedure, it is prayed the court will accept this verified complaint correcting the issues of the Magistrate[']s recommendation for dismissal.").[9] Tolliver made no mention of having received the district court's March 8th order dismissing his claim.

---

[8]In its order adopting the Report and Recommendation, the district court appeared to review only Tolliver's motion for an extension of time to amend his complaint, rather than Tolliver's motion to amend his complaint, which was attached to Tolliver's objections: "Plaintiff objects . . . by arguing that he has filed a Motion to Amend his Complaint, but actually he has filed a Motion for Extension of Time to file an Amended Complaint." R. 14 at 1 (Page ID #97).

[9]Although Tolliver's amended complaint was filed after the district court dismissed his complaint, and thus could not form the basis of the district court's determination as to the merits of his amendment, the timing of Tolliver's amended complaint suggests that Tolliver in good faith understood he was complying with his previous request for an extension of time to amend, despite the district court's refusal to rule on Tolliver's motion.

On this record and under these unique circumstances, we conclude the district court abused its discretion by failing to permit Tolliver to amend his complaint. Generally, "[i]f it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." 6 Charles A. Wright, et al., *Federal Practice and Procedure* § 1483 (3d ed. 2010). Despite clear evidence that Tolliver intended to file an amended complaint which he believed would cure "deficiencies" in his previous filings, Tolliver was cognizant of the timeline for doing so, and had articulated his reasons for his delay, the district court did not provide Tolliver with the chance to file his amended complaint and did not respond to Tolliver's procedurally defective requests. This refusal is particularly problematic given the fact that Tolliver *did* in fact file his promised amended complaint within the thirty days he had requested (and which the district court had not denied).[10] This is thus distinguishable from other cases involving post-judgment amendments, as Tolliver was seemingly (and reasonably) unaware of the dismissal before filing his amended complaint, had previously requested leave to amend, and sent the amended complaint just one day after the dismissal. *See Leisure Caviar, LLC*, 616 F.3d at 617 ("A claimant who seeks to amend a complaint *after* losing

---

[10]In their appellate brief, Defendants appear to suggest implicitly that Tolliver is being untruthful regarding the date he filed his amended complaint, as the motion listed the certificate of service date as March 9, 2017, but it was not filed with the district court until March 22, 2017. *See* R. 16 (Page ID #100). However, the magistrate judge did not make such a finding when it denied Tolliver's motion to amend, *see* R. 17, and Defendants have not pointed to any evidence suggesting Tolliver has been untruthful in his assertions besides the delay in receiving the document. Given the intricacies and various delays involved in mailing documents from prison, *see generally* Fed. R. App. P. 4(c)(1), we will not consider Defendants' unsupported conjectures regarding Tolliver's amendment.

the case must provide a compelling explanation to the district court for granting the motion.”); *Auletta v. Ortino (In re Ferro Corp. Derivative Litig.)*, 511 F.3d 611, 624 (6th Cir. 2008) (noting that following an entry of final judgment, a plaintiff must move to alter, set aside, or vacate a judgment before moving to amend). Additionally, because we conclude that the district court failed to consider adequately all of Tolliver’s connected filings when dismissing this case, *see infra* Section IV.B, and because Defendants have not yet been served, the dual considerations of finality and prejudice usually at play in post-judgment amendments are not readily applicable to Tolliver’s situation. *See Leisure Caviar, LLC*, 616 F.3d at 615–16 (noting courts analyzing a post-judgment motion to amend should consider the interests of “protecting the finality of judgments and the expeditious termination of litigation” (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002))); *cf. In re Ferro Corp. Derivative Litig.*, 511 F.3d at 624 (denying post-judgment amendment when the plaintiffs had eighteen months to amend their complaint before judgment was issued and only sought discovery to determine whether facts existed to support their claim); *see also Brown v. Matauszak*, 415 F. App’x 608, 614–16 (6th Cir. 2011) (permitting a pro se prisoner plaintiff to amend his complaint based on post-judgment evidence, even though the plaintiff did not file a motion for leave to amend or a motion to vacate the judgment).[11]

The reasoning announced in *Brown v. Matauszak* is particularly persuasive. Like Tolliver, the plaintiff in *Brown* was a pro se prisoner plaintiff whose access to the courts claim was

---

[11]We do not mean to determine whether the court erred by refusing to read Tolliver’s post-judgment amended complaint as a motion under Rule 59 or 60. Rather, we mention these considerations to underline the unique posture of Tolliver’s filings and the timeliness of his multiple attempts to amend.

dismissed with prejudice for failure to state a claim. 415 F. App'x at 608–09. Although this court determined that neither Brown's complaint nor his resistance to the defendant's motion to dismiss on remand sufficiently alleged the necessary "claim within a claim" required for his access claim, we nonetheless took notice of Brown's motion for relief from judgment, filed in his separate state case. *Id.* at 614. Noting the "troubling" nature of the district court's refusal to allow Brown leave to amend his complaint given the appellate court's knowledge of the non-frivolous allegations in Brown's state motion, we remanded to permit Brown to amend his district court complaint. *Id.* at 614. This was so even though Brown had not requested leave to amend before the district court. *Id.* at 614–15 ("Particularly where deficiencies in a complaint are attributable to oversights likely the result of an untutored pro se litigant's ignorance of special pleading requirements, dismissal of the complaint without prejudice is preferable." (quoting *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990))). Not only does Tolliver likewise point to a more detailed amended complaint, *see* R. 16-1, but Tolliver is arguably even more deserving of being permitted to amend than Brown, as he *did* request the opportunity to amend his complaint before the sua sponte dismissal.

Finally, we note the inherent difficulty in pleading a "claim within a claim," as required for Tolliver's access-to-the-court claim, as well as the fact that Tolliver's amended complaint, filed after the dismissal order, more fully detailed his allegations and provided a comprehensive overview of his case as it evolved. *See generally* R. 16-1; *see also infra* Part IV.B (explaining Tolliver's repeated attempts to apprise the district court of his changing conditions). This is particularly troubling as Tolliver repeatedly reminded the district court he was a pro se prisoner

plaintiff who was unaware of the appropriate procedures for filing his allegations. *See, e.g.*, R. 12 (Page ID #93); R. 2 (Page ID #15); R. 4 (Page ID #27).

By refusing to permit, or apparently even to consider, Tolliver's requested extension, the district court did not afford Tolliver's pro se pleadings the appropriate "leniency" required. *See Lawler v. Marshall*, 898 F.2d 1196, 1200 (6th Cir. 1990) (explaining "it is clear that leniency in the strictures of pleading should be shown to *pro se* plaintiffs"); *Brown*, 415 F. App'x at 616 (finding the district court had abused its discretion by dismissing the plaintiff's access claim, despite his failure to request an amendment, and remanding the case to allow the plaintiff to amend his complaint when post-dismissal filings suggested plaintiff had a valid claim); *Gordon v. England*, 354 F. App'x 975, 981–82 (6th Cir. 2009) (remanding for leave to amend based on allegations presented to the appellate court, since the plaintiff "was proceeding *pro se* and was likely to have been unaware of the requirements of Rule 15"). Given these considerations, the district court abused its discretion when it refused to allow Tolliver requested time to amend his complaint and, instead, dismissed Tolliver's complaint and denied his motion for an extension of time as moot. Consequently, we remand this case in the interest of justice to allow Tolliver to amend his complaint.

## B. Consideration of Additional Documents

Although it is not dispositive as to Tolliver's claim regarding leave to amend, we briefly note the concerns this case has raised regarding the documents that the district court reviewed in its determination. Specifically, in denying as moot Tolliver's motion for an extension of time to amend, the district court noted "Plaintiff's objections present the same issues presented to and

considered by the Magistrate Judge . . . . He has [thus] failed to establish any basis for reconsideration of the Magistrate Judge's conclusions that his Complaint fails to state a claim [on] which relief may be granted." R. 14 at 2 (Page ID #98). However, the district court did not examine the allegations contained in the additional documents that Tolliver filed in October and November 2016 when determining whether Tolliver had sufficiently stated a claim for relief and, therefore, whether his motion to amend was "moot." By not examining these additional filings or the factual allegations that they contained, the district court's decision to dismiss Tolliver's motion for an extension of time to amend was necessarily incomplete and unresponsive to the consistent effort Tolliver made to inform the district court. Put simply, Tolliver's additional documents provided necessary context for both his objections to the Report and Recommendation and his request for an extension of time to amend his filings. These concerns, detailed below, further support our decision to remand to permit Tolliver to amend.

Defendants maintain that the district court was required to examine only the factual allegations contained in Tolliver's "Complaint" and that district courts should not be required to "cobble together causes of action as if it were piecing together an elaborate jig-saw puzzle." Appellees Br. at 9. Defendants rely on *Bell Atlantic Corp. v. Twombly*, *Ashcroft v. Iqbal*, and the plain language of the Federal Rules of Civil Procedure for support. *Id.* at 18–20. However, neither *Twombly* nor *Iqbal* discussed the documents which may make up a party's pleadings; rather, in both cases, the Supreme Court merely considered the factual allegations that such pleadings must contain. *See Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. 544, 570 (2007). Furthermore, although Federal Rule of Civil Procedure 7(a) explains that a "pleading" consists of, among other

things, "a complaint," Defendants' argument ignores the cases in this court, as well as other Circuits, suggesting that, when the pleadings are filed by pro se plaintiffs, the court may consider additional, supporting documents which either serve to elaborate on a complaint or amend the initial filing. *See Brown*, 415 F. App'x at 613–14 (determining that although the plaintiff's response to the defendant's motion to dismiss did not provide sufficient factual support, the district court should have granted plaintiff leave to amend based on the allegations contained in his motion for relief from judgment in the plaintiff's separate state-court case); *Flournoy v. Seiter*, No. 87-3535, 1987 WL 24129, at *1 (6th Cir. Dec. 7, 1987) (unpublished) (explaining that when a court was considering whether plaintiff's complaint was frivolous, "plaintiff's affidavits should be read as part of the pleadings"); *see also Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 151–52 (D.C. Cir. 2015) (determining the district court erred by failing to consider the pro se plaintiff's complaint "in light of" all filings, including his response to the defendant's motion to dismiss); *Pearson v. Gatto*, 933 F.2d 521, 527 (7th Cir. 1991) (noting that the pro se plaintiff "clearly attempted to preserve his rights when he wrote the judge a letter before the statute [of limitations] had run" which included additional factual allegations, and determining the court erred by not considering the letter).

Furthermore, given the timeline of Tolliver's additional filings, as well as the questionable designation of his "Complaint," Defendants' argument is ill-suited for this particular case. Specifically, as noted above, on October 25, 2016, Tolliver filed, via the prison mail system, five documents with the court; none of them were designated as a "Complaint." Rather, the "Complaint" was entitled "Notice of Denial of Access to Court and Emergency Request for Order

Directing Access" and was, in fact, the *last* document signed by Tolliver. *See* R. 1 (Compl.) (Page ID #9) (signed October 21, 2016); R. 2 (Mot. for TRO) (Page ID #25) (signed October 18, 2016); R. 3 (Judicial Notice) (Page ID #26) (not designating a date but noting it was filed in conjunction with his previously filed motion for a TRO); R. 4 (Suppl. Affidavit) (Page ID #36) (signed October 19, 2016); R. 5 (Mot. for Docs.) (Page ID #42) (signed October 19, 2016). Tolliver noted this inconsistency in his objections to the magistrate judge's Report and Recommendation. *See* R. 12 at 1–2 (Page ID #90–91) (explaining the amended complaint would address the deficiencies in the original motion for a TRO and noting that "Doc. 2 [the motion for a TRO] . . . was my first filing but the court recorded second").

When the filings are considered in the order of their signature date, rather than their docket number, the "Complaint" designation becomes even more questionable. For instance, Tolliver's first-in-time signed filing (R. 2) articulates the general basis for his First Amendment retaliation claim in the form of an unwarranted transfer in retaliation for his protected conduct of using the prison grievance process, which he asserts will disrupt his Horizon re-entry program at London and extend the distance between him and his family. *See* R. 2 at 10–13 (Page ID #22–25) (explaining his concerns with being transferred out of London and concluding "I have been in seg[regated] housing since Sept. 6, 2016 upon a false report me[a]nt as retaliation for my protected conduct under the First Amendment's right to redress grievances"). Thus, Tolliver requested that the district court enter a temporary restraining order halting this transfer. *Id.* at 9 (Page ID #21). He also generally mentions that since he has been placed in segregated housing, "apparently half of his property has vanished." *Id.* at 3 (Page ID #15). Three of the subsequent documents Tolliver

signed, R. 3–5, all elaborate on his concerns relating to his imminent transfer and support his request for an order stopping the transfer; they do not reference the assertions made in his Notice of Denial of Access. *See* R. 3 at 1 (Judicial Notice) (Page ID #26) (explaining that he was going to be transferred to Pickaway, reaffirming his request that he should be able either to complete his re-entry program or to be transferred to Marion, a comparable facility, and noting that although he does not have "a right to choose prisons at will," he does have "a right to be free of retaliation for protected conduct"); R. 4 at 2, 6 (Suppl. Aff.) (Page ID #28, 32) (stating the affidavit was meant to supplement facts not originally included in his TRO request, noting that the only "staff issue" forming the basis for his transfer was "his First Amendment protected conduct resulting in contractor dismissal," and explaining he believed his transfer appeal was denied in violation of his due process rights); R. 5 (Mot. for Docs.) (Page ID #37) (requesting the court review his transfer form "to determine if said document is flawed in such a way that due process is being denied" and asking the court to order documents relating to the religious contractor's qualifications, Tolliver's discipline, the contractor's complaint against Tolliver, and the ODRC's nexus policy). The last document Tolliver signed in the filings docketed on October 25, 2016 was his "Notice of Denial of Access," designated by the district court clerk as his "Complaint." R. 1. This filing vaguely reiterated his concerns regarding his transfer and instead primarily focused on his allegations regarding his legal property. *See generally* R. 1. Finally, at least two of these filings were referred to as "affidavits." *See* R. 1 (Page ID #1); R. 4 (entitled "Supplemental Affidavit"). As this court has noted, such affidavits may be considered as part of a pro se plaintiff's pleadings. *See Flournoy*, 835 F.2d at 878.

22

Given these filings, it is apparent that, despite Record 1 being docketed as a "Complaint," Tolliver in fact intended Record 1 to be the last in a line of related filings in October 2016. Furthermore, when considered together, Tolliver is supplementing his original motion, rather than filing new, unconnected documents that raise novel legal issues. As Tolliver learned more about the circumstances surrounding his solitary confinement, including the status of his legal documents and the name of the prison he would ultimately be transferred to, Tolliver provided additional information to the court, often within a day or two of the previous filing. Tolliver did so by repeatedly apologizing to the court for his inartful pleadings and, as noted above, requesting the court consider the documents together. *See, e.g.*, R. 2 at 3 (Page ID #15) ("Tolliver apologizes for this irregular motion."); R. 4 at 1 (Page ID #27) ("Having only simple knowledge of process and procedure, and less ability due to being in seg[regated] housing (with no access to law resources or advice), he asks the court to forgive these irregular filings."); R. 1 at 1 (Page ID #1) ("Once again [ ] Tolliver ap[ ]ologizes to this court for not knowing or using the correct form to make this request."). Finally, Tolliver continued this trend by filing a detailed notice in November 2016 after he was transferred to Pickaway and further understood the location of his legal property. *See* R. 7. The title of this document ("Judicial Notice Of: Transfer to Pickaway Correctional Institute, Partial Return of Investigator's Pack-Up, Continuation of Retaliation") clearly indicates Tolliver's intention to supplement his previous filings due to his changed circumstances at Pickaway.

We understand the need to ensure efficient and accurate considerations of the numerous, and often insufficient, complaints filed by incarcerated individuals. *See Bock*, 549 U.S. at 203 (requesting "fewer and better prisoner suits"). Similarly, it is well established that a pro se litigant

23

may not disregard the rules of court. *McNeil v. United States*, 508 U.S. 106, 112 (1993). However, these policies have their limits. Specifically, the district court in this case was not permitted to rely solely on the allegations contained in the "Complaint" when a cursory review of the document indicated that Tolliver had not, himself, designated the "Complaint" as such and had, in fact, filed four additional documents dated *before* his "Complaint" was filed. Finally, Tolliver himself informed the district court about this issue, noting it was his motion for a TRO, rather than his notice of denial of access (R. 1), that he intended to amend.

Despite this evidence, the district court relied only on the allegations contained in Tolliver's "Complaint" when considering whether Tolliver's request for an extension to amend or his objections had provided additional facts beyond what the magistrate judge considered. These allegations were understandably limited in detail due to the facts contained in Tolliver's previous filings. When considering a pro se complaint, district courts must be more cognizant of the context of the plaintiff's filings; refusal to examine the plaintiff's allegations inappropriately imposes a rigid, rather than lenient, standard previously endorsed by this court. *See Williams*, 631 F.3d at 383 ("*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers."); *Taylor v. Larson*, 505 F. App'x 475, 477–78 (6th Cir. 2012) (considering the pro se plaintiff's "elaboration on the factual allegations of the original complaint," even though those "elaborations" were contained in an amended complaint filed after judgment was entered); *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004) (noting a court's duty to read pro se claims forgivingly). Although we have already concluded the district court abused its discretion by failing

to allow Tolliver an extension to file an amended complaint, this issue further illustrates the need to allow Tolliver to amend his complaint.

## V.  CONCLUSION

For the reasons set forth above, we REVERSE the district court's dismissal of Tolliver's complaint and REMAND with instructions to permit Tolliver to amend his complaint within thirty days of the issuance of our mandate.

No. 17-3367, *Tolliver v. Noble et al.*

JOHN K. BUSH, Circuit Judge, concurring in the judgment in part and dissenting in part. I agree with the majority that Tolliver's First Amendment retaliation and access-to-the-courts claims should not have been dismissed with prejudice. But, contrary to the majority, I do not believe that the district court abused its discretion in similarly dismissing the due process claim. My differences with the majority arise from a different understanding of cases in which district courts abused their discretion by dismissing with prejudice *pro se* complaints. *See, e.g.*, *Taylor v. Larson*, 505 F. App'x 475, 477–78 (6th Cir. 2012) (per curiam); *Brown v. Matauszak*, 415 F. App'x 608, 616 (6th Cir. 2011); *Berndt v. Tennessee*, 796 F.2d 879, 882–83 (6th Cir. 1986).

Although we are to "hold [the *pro se* complaint] to less stringent standards than formal pleadings drafted by lawyers," *Brown*, 415 F. App'x at 613 (citation omitted), we nonetheless cannot "create a claim which [a plaintiff] has not spelled out in his pleading," *id.* (alteration in original) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)). This prohibition against creating claims that are "not spelled out" means that the court cannot take on the role of an advocate and formulate theories of liability not sufficiently supported by facts already stated by the plaintiff. *See id.*; *Clark*, 518 F.2d at 1169. If the district court cannot "identify cognizable claims," then it may *sua sponte* dismiss the complaint with prejudice under 28 U.S.C. § 1915A(b). To be sure, the "district court can allow a plaintiff to amend his complaint," *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013), but, after expiration of the 21-day period for the plaintiff to amend as of right under Federal Rule of Civil Procedure 15, the district court need not allow amendment if the court cannot discern sufficient facts from the record before it to support any claim. *See id.* I part ways with the majority opinion because it seems to preclude a

26

district court from dismissing a claim with prejudice even when the prisoner has not made this requisite, predicate factual showing.

My differences with the majority opinion can be illustrated by considering *Brown*, where this court reversed the district court's dismissal with prejudice in view of additional allegations discernable from the prisoner's separate state case. *See* 415 F. App'x at 614. We reversed because "[i]f [Brown were] simply allowed an opportunity to add the factual bases for [Brown's] underlying claims to [Brown's] complaint, it would [have been] fully sufficient to proceed to the merits." *Id.* at 616. Thus, reversal of a dismissal with prejudice is "uniquely appropriate" if there is information already within the knowledge of the court—for example, allegations by the prisoner in another case that may be judicially noticed—that would cure the defect in the complaint. *See id.* But this principle does not mean, as the majority opinion seems to suggest, that the dismissal should always be reversed if the prisoner could conceivably make "more fully detailed . . . allegations" or "point to a more detailed amended complaint," Majority Opinion at 17, regardless of whether the allegations made thus far by the prisoner are sufficient to fully support at least one claim. Nor does this principle mean that when a prisoner provides a "comprehensive overview of his case as it evolved," reversal is warranted, as the majority suggests. *Id.*

Here, there are no allegations from another case, as in *Brown*, to fill in the gaps in the complaint.[1] But we do have other papers Tolliver filed in the district court from which to discern the facts needed to fill in the gaps. I agree that those submissions are proper for consideration and preclude dismissal of the First Amendment retaliation and the access-to-court claims with

---

[1] By "complaint" I mean the document that the district court clerk labeled as such. R. 1.

prejudice. But even giving all of Tolliver's filings the lenient consideration to which they are entitled as *pro se* submissions, there still are not enough facts asserted to warrant reversing the dismissal of the due process claim.

With respect to conduct protected by the First Amendment (the first element of the retaliation claim), Tolliver alleges that his placement in solitary confinement "is an act of retaliation for [F]irst Amendment protected conduct. (i.e. grievances which resulted in a contractor for religious services being terminated[])." R. 1 (Page ID #4). Protected conduct includes a prisoner's "undisputed First Amendment right to file grievances against prison officials on his own behalf," provided that the grievances are not frivolous. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Although Tolliver's pleading does not provide details about the filed grievances, it does imply that they were not frivolous because they led to the termination of a contractor for religious services.

Tolliver also alleges facts sufficient to show that defendants took adverse action against him, which is the second element of a retaliation claim. An adverse action is one that is "capable of deterring a person of ordinary firmness" from exercising his constitutional right, *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (citation omitted), and "[e]ven the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct," *Hill v. Lappin*, 630 F.3d 468, 472 (citing *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009)). Tolliver states that he was placed in solitary confinement and that his previous religious services contractor "filed a 'false report' to try and have Tolliver's security status raised." R. 1 (Page ID #5). This is adequate to plead adverse action. *See Hill*,

630 F.3d at 474 ("[R]estricting a prisoner's housing by placing him in administrative segregation constitutes an adverse action."); *Dunham-Bey v. Holden*, 198 F.3d 244, 1999 WL 102370, at *2 (6th Cir. Nov. 5, 1999) (unpublished table opinion) (concluding that prisoner's allegation that false disciplinary actions were filed against him was sufficient to plead an adverse action and withstand motion to dismiss).

The pleading, however, does not sufficiently state the third element of a retaliation claim—that the adverse action "was motivated at least in part by the prisoner's protected conduct," *Hill*, 630 F.3d at 475 (citing *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005)). In his complaint, Tolliver asserts that defendants used a nexus transfer "as a tool to punish" him because of a false report filed against him. R. 1 (Page ID #5). Without more, this statement does not sufficiently allege facts to establish the requisite motivation. Nonetheless, even though the pleading is deficient, there are factual allegations in Tolliver's affidavit that, if incorporated into an amended complaint, would withstand a motion to dismiss. *See generally* R. 4.

Tolliver explains that one defendant started an investigation into Tolliver's conduct in response to a complaint filed by the institution's religious services contractor. This is the same religious services contractor against whom Tolliver filed a grievance, leading to the contractor's termination. After reviewing the complaint filed against Tolliver, the investigator allegedly told Tolliver: "I'm taking this as a false report but instead of writing you some bogus rule 17 to get rid of you I'm going to nexus you." R. 4 (Page ID #28). The investigator allegedly told Tolliver this news two weeks after his being placed in solitary confinement. Thus, according to Tolliver's supplemental affidavit, the investigators continued to keep Tolliver in solitary confinement after

concluding the report was false. Taken together, these allegations are sufficient to establish that at least one defendant's adverse action was motivated by Tolliver's protected conduct. Therefore, there are enough factual details in the record below that, if incorporated into an amended complaint, would allow Tolliver's complaint to survive a motion to dismiss.

The same can also be said of his access-to-the-courts claim, which requires a showing of "actual prejudice to pending or contemplated litigation." *Fitts v. Sicker*, 232 F. App'x 436, 442–43 (6th Cir. 2007) (citation omitted) (quoting *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)) (failure to state a claim where prisoner failed to "state[] what documents were stolen or sent away" or "how the unavailability of [the] documents prejudiced" prisoner). The complaint alleges that the materials seized by the defendants from Tolliver were "critical items of New Evidence, Original Affidavits, Tolliver's 3500 page transcript from his month long trial, notes and irreplaceable research. He has [an] active 2244 Petition in the U.S. Court of Appeals, [a] RLUIPA claim he's been collecting documentation for 3 years and would have filed next month." R. 1 (Page ID #7–8). There is no assertion in his complaint that the loss of his papers prejudiced his past or current litigation. Nor does Tolliver contend that the documents collected for the RLUIPA claim were needed to file that claim or that without those documents he would be unable to file. Indeed, we may take judicial notice that Tolliver pleaded his RLUIPA claim in his March 22, 2017 amended complaint. Absent more details, these assertions are the same type of conclusory allegations that this court has held are insufficient to state a claim. *See Fitts*, 232 F. App'x at 442–43.

However, there are additional facts in the underlying record to support Tolliver's access-to-the-courts claim. Tolliver's affidavit explained that the seized documents were "current and necessary" to his legal claims. Importantly, Tolliver has not alleged he was only denied access to his documents. *See generally* R. 7. Instead, he alleges that documents for some of his pending legal challenges have either been stolen or gone missing because of defendants' conduct. *See id.* Further, unlike the prisoner in *Fitts* who did not "specifically state[] what documents were stolen or sent away," Tolliver explains in detail the specific documents that went missing from his legal boxes. *Fitts*, 232 F. App'x at 442. Specifically, Tolliver explains that evidence to support his "pending challenge to ODRC Policy 72-REG-1 thru 12" went missing after defendants seized his materials in early September 2016. R. 7 (Page ID #51). Tolliver then provides an itemized list of the missing evidence that he had used to support that challenge. Therefore, the district court erred when it concluded that Tolliver failed to sufficiently allege an access-to-the-courts claim,[2] and I would reverse the district court's dismissal of this claim with prejudice.

But the dismissal of Tolliver's due process claim with prejudice should be affirmed. To state this claim, Tolliver must plead that the state deprived him of a protected liberty interest. *See Swihart v. Wilkinson*, 209 F. App'x 456, 458 (6th Cir. 2006) (citing *Zimmerman v. Burch*, 494 U.S. 113, 125 (1981)). Under *Sandin v. Conner*, 515 U.S 472 (1995), a transfer interferes with a prisoner's liberty interest if the transfer could affect the duration of an inmate's sentence or inflict an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prisoner

---

[2]The alleged seizure of legal documents may also provide factual support for the adverse action element of Tolliver's retaliation claim. *See Bell*, 308 F.3d at 604; *Kennedy v. Bonevelle*, 413 F. App'x 836, 839 (6th Cir. 2011).

life." *Id.* at 484, 486–87. Whether a liberty interest is deprived under *Sandin* "requires a situationally-based factual analysis." *Austin v. Wilkinson*, 372 F.3d 346, 354 (6th Cir. 2000), *aff'd in relevant part*, 545 U.S. 209 (2005). Tolliver's complaint summarily asserts that his "due process rights have been violated by a flawed DRC 2009 form which among other facts created an invalid transfer hearing." R. 1 (Page ID #4). But Tolliver fails to explain how his transfer imposed an "atypical and significant hardship," as is necessary to state a due process claim based on that transfer under *Sandin*.[3]

Accordingly, I agree with the majority that reversal is warranted for the dismissal with prejudice of the retaliation and access-to-the-courts claims, but I would affirm the district court's dismissal of the due process claims.

---

[3]Tolliver also argues that his complaint supports a viable due process claim concerning the seizure of his personal property. Appellant Br. at 34. But we should not make this inference, given this court's instruction not to "create a claim which [a *pro se* plaintiff] has not spelled out in his pleading." *Brown*, 415 F. App'x at 613. Tolliver's complaint, fairly read, relates the seizure of his personal property to his access-to-the-courts, not his due process, claim.